IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIMBERLY ANN POLK<br>21913 Foxlair Rd.<br>Gaithersburg<br>Montgomery County, Md. 20882<br><br>    Plaintiff,<br>    v.<br><br>MONTGOMERY COUNTY PUBLIC SCHOOLS<br>850 Hungerford Drive<br>Rockville, Maryland 20850<br><br>MONTGOMERY COUNTY BOARD OF EDUCATION<br>850 Hungerford Drive<br>Rockville, Maryland 20850<br><br>SHEBRA L. EVANS, MONIQUE FELDER,<br>LYNNE HARRIS, GRACE RIVERA-OVEN,<br>KARLA SILVESTRE, REBECCA SMONDROWSKI,<br>BRENDA WOLFF and JULIE YANG, in both their<br>  individual and official capacities as board members<br>850 Hungerford Drive<br>Rockville, Maryland 20850<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 8:24-cv-1487<br><br>Jury Trial Demanded |

VERIFIED COMPLAINT FOR MONETARY,
DECLARATORY, AND INJUNCTIVE RELIEF

      The Plaintiff, Kimberly Ann Polk, being duly sworn, avers as follows for her verified complaint:

Nature of the Case

1. Ms. Polk brings this action because she was unlawfully denied a religious accommodation by the Montgomery County Public Schools ("MCPS") when she objected to certain parts of the MCPS *Guidelines for Student Gender Identity* ("Gender Identity Guidelines").  Those parts required her as an MCPS substitute teacher to assist children as young as three to transition genders at school and to hide this transitioning from the child's parents if MCPS officials believe the parents might not be "supportive" of the transition.

2. In this instance, accommodation would have been simple.  Ms. Polk has previously substituted in preschool special education, kindergarten, and elementary classrooms, and there are many such classrooms in the MCPS system that do not include transitioning children.  Moreover, if a child expresses a newfound desire to transition, Ms. Polk is willing to obtain assistance for the child from other MCPS personnel.

3. Ms. Polk has already lost two school years of substitute teaching due to MCPS's unlawful refusal to accommodate her religious beliefs.  Without injunctive relief, she will also lose the 2024-25 school year.

Jurisdiction and Venue

4. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343, as Ms. Polk alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.  Ms. Polk exhausted her administrative remedy by filing a timely charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), and she has filed this complaint within 90 days of receipt of her "right to sue" notice from the EEOC.  Ms. Polk also requests declaratory relief under 28 U.S.C. § 2201.

5.  This Court is an appropriate venue under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391. Both the Plaintiff and Defendants reside in this district and the events from which the causes of action arise occurred in this district.

Parties

6.  Ms. Polk is a university graduate and a resident of Montgomery County, Maryland. She is married and has raised five children, the youngest of which is currently in college.

7.  Defendant MCBE is a public entity that, pursuant to § 4-101 of the Education Article of the Code of Maryland, controls educational matters that affect Montgomery County.  Pursuant to § 4-108(3) of the Education Article, MCBE is authorized to adopt educational policies for MCPS, but not if those rules and regulations are inconsistent with State law.  Pursuant to § 4-108(4) of the Education Article, MCBE is authorized to adopt rules and regulations for the conduct and management of MCPS, but not if those rules and regulations are inconsistent with State law.  MCBE's principal place of business is located at 850 Hungersford Drive, Rockville, Maryland.

8.  MCPS is a "local school system" and "educational institution" as each is defined in Chapter 13a.08.02.03 of the Code of Maryland Regulations.  MCPS is the public school district for Montgomery County and is the largest in Maryland.  MCPS has an operating budget for FY2023-24 of over $3 billion, has over 25,000 full-time employees, and has 136 elementary schools, each of which has multiple kindergarten and graded classes, and typically more than one of each type.  Fourteen elementary schools provide preschool special education classes.  In 2023, MCPS was the seventh largest employer in the state.  MCPS's offices and principal place of business are located at 850 Hungerford Drive, Rockville, Maryland 20850.

9. Defendants Shebra L. Evans, Jeanette E. Dixon, Lynne Harris, Karla Silvestre, Grace Rivera-Oven, Rebecca Smondrowski, Branda Wolff, Julie Yang, and Monique Felder (collectively, "MCBE Members") are elected members of the Montgomery County Board of Education.  They are all sued in both their official and individual capacities.

10. Defendant Monique Felder is the Interim Montgomery County Superintendent of Schools.  She is sued in both her official and individual capacities.  Pursuant to § 4-102 of the Education Article of the Code of Maryland, Defendant Felder is the executive officer, secretary, and treasurer of MCBE.  Defendant Felder is responsible for implementing and enforcing policies, rules, and regulations adopted by MCBE and MCPS.

## Statement of the Case

Gender Identity Guidelines

11. Prior to the 2019-20 school year, MCPS adopted the 2019-20 Gender Identity Guidelines.  It has then published substantively the same Gender Identity Guidelines for each school year thereafter, including the current, 2023-24 school year.  (The Gender Identity Guidelines are found at https://www.montgomeryschoolsmd.org/siteassets/district/compliance/0840.23_genderidentityguidelinesforstudents_english.pdf.)

12. The Gender Identity Guidelines provide the following definitions:

> GENDER IDENTITY A person's deeply held internalized sense or psychological knowledge of the person's own gender. One's gender identity may be the same as or different from the sex assigned at birth. Most people have a gender identity that matches their sex assigned at birth. For some, however, their gender identity is different from their sex assigned at birth. All people have gender identity, not just persons who are transgender or gender nonconforming people. For the purposes of this guidance, a student's gender identity is that which is consistently asserted at school.
> . . . .

>SEX ASSIGNED AT BIRTH The sex designation recorded on an infant's birth certificate, should such a record be provided at birth.
>
>TRANSGENDER An adjective describing a person whose gender identity or expression is different from that traditionally associated with the person's sex assigned at birth. Other terms that can have similar meanings are "transsexual" and "trans."

13. With respect to "transgender and gender nonconforming students," the Gender Identity Guidelines provide in part as follows:

>**Gender Support Plan**
>
>The principal (or designee), in collaboration with the student and the student's family (if the family is supportive of the student), should develop a plan to ensure that the student has equal access and equal opportunity to participate in all programs and activities at school and is otherwise protected from gender-based discrimination at school. . . .

14. With respect to privacy, disclosure of information, the use of names/pronouns for transgender students, and use of gender-separated areas, the Gender Identity Guidelines provide in part as follows:

>Privacy And Disclosure Of Information
>
>All students have a right to privacy. This includes the right to keep private one's transgender status or gender nonconforming presentation at school.
>
>Information about a student's transgender status, legal name, or sex assigned at birth may constitute confidential medical information. Disclosing this information to other students, their parents/guardians, or third parties may violate privacy laws, such as the federal Family Educational Rights and Privacy Act (FERPA).
>
>Schools will ensure that all medical information, including that relating to transgender students, is kept confidential in accordance with applicable state, local, and federal privacy laws.
>
>Please note that medical diagnosis, treatment, and/or other documentation are not required for a school to accommodate requests regarding gender presentation, identity, and diversity.
>
>Transgender and gender nonconforming students have the right to discuss and demonstrate their gender identity and expression openly and decide

when, with whom, and how much to share private information. The fact that students choose to disclose their status to staff members or other students does not authorize school staff members to disclose students' status to others, including parents/guardians and other school staff members, unless legally required to do so or unless students have authorized such disclosure.

It is inappropriate to ask transgender or gender nonconforming students more questions than are necessary to support them at school.

Names/Pronouns

All students have the right to be referred to by their identified name and/or pronoun School staff members should address students by the name and pronoun corresponding to the gender identity that is consistently asserted at school. . . .

**Staff Communication**

. . . .

Unless the student or parent/guardian has specified otherwise, when contacting the parent/guardian of a transgender student, MCPS school staff members should use the student's legal name and pronoun that correspond to the student's sex assigned at birth.

. . . .

Gender-separated Areas

Where facilities are designated by gender, students must be provided access to gender-specific facilities (e g , bathrooms, locker rooms, and changing rooms) in alignment with their gender identity consistently asserted at school.

15. The Gender Identity Guidelines require MCPS personnel to prepare a "gender support plan" for each student who expresses the desire to transition genders at school: "The principal (or designee), in collaboration with the student and the student's family (if the family is supportive of the student), should develop a plan to ensure that the student has equal access and equal opportunity to participate in all programs and activities at school and is otherwise protected

from gender-based discrimination at school." It instructs MCPS personnel to use MCPS Form 560-80 "to support this process . . . ."

16. The Gender Identity Guidelines apply to all students of all ages in the MCPS system, including preschool, kindergarten, and elementary school students.

17. As quoted above, the Gender Identity Guidelines require teachers to use pronouns and to allow transgender students to use sex-segregated facilities consistent with a student's "consistently asserted [gender] at school."

18. As quoted above, the Gender Identity Guidelines contain specific provisions that interfere with the rights of parents to be fully informed and involved in addressing issues relating to gender transition with their minor children and that are designed to hinder parents from deciding what is in their minor children's best interests. The Gender Identity Guidelines contain provisions that require school officials to withhold information from parents about their minor child's professed transgender status if the child does not consent to disclosure.

19. The Gender Identity Guidelines state that providing information to parents "about a student's transgender status" to "their parents/guardians . . . may violate privacy laws, such as the federal Family Educational Rights and Privacy Act (FERPA)." This is incorrect. Withholding such information from parents violates both state law and FERPA.

20. MCPS has generated a MCPS Form 560-80, entitled "Intake Form: Supporting Student Gender Identity," to facilitate the Gender Identity Guidelines. Form 560-80 contains the following instructions:

> **Instructions:** The school administrator, counselor, or psychologist should complete this form with the student. Parents/guardians may be involved if the student states that they are aware of and supportive of the student's gender identity. This form should be kept in a secure, confidential location. See distribution information on Page 2. This form is not to be kept in the

> student's cumulative or confidential folders. All plans should be evaluated on an ongoing basis and revised as needed.

The distribution stated for the form is as follows:

> Copy 1/School Confidential folder (in principal's office)
>
> Copy 2/ Student Welfare and Compliance Unit, via scan to COS-StudentWelfare@mcpsmd.org, or via pony to CESC, Room 162, in a [sic] envelope marked confidential

(MCPS Form 560-80 is found at https://ww2.montgomeryschoolsmd.org/departments/forms /detail.aspx?formNumber=560-80&catID=1&subCatId=44.)

21. Form 560-80 requires an evaluation of minor students by MCPS personnel, and, among other things requests a "yes" or "no" response by the minor students to, "Is parent/guardian aware of your gender identity?" Form 560-80 then requires minor students exhibiting transgender inclinations or actions to identify a "Support Level" they believe would be provided by their parents, to be ranked from "(None) 1" to "10 (High)." It does not specify the score needed for a parent to be considered "supportive" as stated in the instructions. However, it does continue, "If [parental] support level is low[,] what considerations must be accounted for in implementing this plan?," leaving a space to be filled in. Such "considerations" would include withholding information from parents about their minor children and using pronouns conforming to the children's birth gender when speaking to the parents about their children, even though other pronouns are used at school.

22. The limited distribution of MCPS Form 560-80 as specified by the form (and in the Gender Identity Guidelines) is designed, in part, to prevent review of the form by the parents of the minor child. Per the Gender Identity Guidelines, MCPS personnel are not to make completed MCPS Forms 560-80 available to the parents of minor children unless the minor child consents

to its disclosure to the parents and MCPS personnel assess the parents to be sufficiently "supportive" of their child transitioning genders at school.

23. The evaluation by MCPS personnel of minor students as required by the Gender Identity Guidelines and Form 560-80 by design does not involve prior parental notice or consent.

Ms. Polk's Prior Experience at MCPS

24. During the 2021-22 school year, Ms. Polk worked part-time for MCPS as a substitute teacher on ten occasions at eight different elementary schools.  This amount of teaching qualified her to continue as a substitute teacher for MCPS for the next school year without reapplying.

25. During the 2021-22 school year, the majority of the classes in which she substituted were for preschool special education, but she also taught kindergarten, Grade 2, and Grade 4.

26. During the 2021-22 school year, Ms. Polk received uniformly positive reviews and responses concerning her teaching.  One teacher for whom she had previously substituted specifically asked for her.

27. During the 2021-22 school year, Ms. Polk did not encounter any student in her classes who presented as other than the child's biological gender.

Ms. Polk's Accommodation Request and MCPS's Refusal

28. Ms. Polk desired to continue to work for MCPS during the 2022-23 school year, while increasing the number of days that she would be available to substitute, due to her other part-time job ending.

29. As part of the retention process for the 2022-23 school year, MCPS instructed Ms. Polk to review several interactive, instructional videos, including those about MCPS policies and procedures.  Ms. Polk complied, and one of those instructional videos involved the Gender Identity Guidelines.

30. At the conclusion of the video on the Gender Identity Guidelines, the video instructed Ms. Polk to sign electronically (by clicking a box) an affirmation that she had watched and understood the video and that she would fully adhere to the guidelines.

31. Due to Ms. Polk's sincerely held religious beliefs, she was not able to affirm that she would adhere to the Gender Identity Guidelines. In particular, Ms. Polk, based on her understanding of her Christian religion and the Holy Bible, sincerely believes that

   a. God created individuals as either male or female and she would act unethically if she affirmatively assisted children to present as other than their God-given sex. This would include lying to children by using pronouns for them that do not match their God-given, biological sex.

   b. God gave parents the primary responsibility for the care and upbringing of their minor children and it would be unethical for her to hide from parents that their child is transitioning genders at school.

   c. God requires modesty to be exercised between the sexes and it would be unethical for her to assist a child of one sex to use the restroom of the opposite sex while others of the opposite sex were present.

32. On November 21, 2022, Ms. Polk submitted to Mr. Khalid Walker, Compliance Coordinator for MCPS, a request for an accommodation on this matter. On that same date, she submitted a request via the MCPS web site.

33. During a conversation shortly after she submitted her accommodation request, Mr. Walker and Ms. Polk discussed parameters of a possible accommodation, subject to further MCPS approval. Some of the particulars that they discussed were as follows:

   a. Mr. Walker informed Ms. Polk that she would not have to use preferred pronouns.

    b. Mr. Walker informed Ms. Polk that she would not be required to sign the affirmation.

    c. Mr. Walker stated that Ms. Polk would be permitted to teach in the elementary schools and preschool special education program but not in the middle or high schools, to which she agreed as a compromise solution.

    d. Mr. Walker and Ms. Polk discussed in detail her expectations about how often gender or bathroom use issues would arise. Ms. Polk expressed her belief that the issue was unlikely to arise and had not come up in her previous year of substitute teaching. Mr. Walker informed Ms. Polk that he, too, believed that these issues would be unlikely to arise in the elementary or preschool special education environment.

    e. Mr. Walker informed Ms. Polk that, in the event a child presented gender identity issues such that she could not adhere to Gender Identity Guidelines, the school would provide her with someone else, like a school administrator, who would be able to provide her with support and to interact instead with the student.

34. On December 13, 2022, Mr. Walker informed Ms. Polk that MCPS had rejected any accommodation for her.

35. At no time has MCPS officially offered Ms. Polk a religious accommodation, and she has not been able to teach at MCPS during the 2022-2023 or 2023-2024 school years.

36. Being unable to continue and increase substitute teaching at MCPS has resulted in a negative financial impact to Ms. Polk and her family.

EEOC Proceeding

37. Ms. Polk timely filed a charge of employment discrimination with the EEOC on August 10, 2023, alleging that MCPS had wrongfully failed to provide her an accommodation of her sincerely held religious beliefs as required by Title VII.

38. On February 5, 2024, MCPS filed its statement of position ("SOP") with EEOC. MCPS stated that the Gender Identity Guidelines reflected policies of significant importance to MCPS.  It further stated that the only accommodation MCPS would consider for Ms. Polk would be to allow her not to execute the affirmation in the training materials that she would abide by the policy in its entirety, but she would still be required to do so when working.  This is not a true accommodation, but, instead, compels Ms. Polk to choose between losing her job and being untrue to her religious convictions.

39. MCPS failed to provide any data or information in its SOP identifying how Ms. Polk's involvement teaching in preschool and the elementary grades would pose an undue hardship to MCPS in the conduct of its business. For instance,

   a. MCPS failed to provide the number of students presenting as transgender or non-binary or gender fluid in the elementary or preschool student population, despite having such data per its Gender Identity Guidelines.

   b. MCPS failed to identify how many elementary or preschool classes have even one transgender student in them, which data should be readily available because all transitioning students are to have a written "gender support plan" on file pursuant to the Gender Identity Guidelines.

   c. MCPS failed to identify a population of transgendered or gender-confused students that Ms. Polk would invariably need to teach.

   d. MCPS failed to identify any administrative or other burden if Ms. Polk required assistance with handling a transgender student or situation.

40. On March 9, 2024, Ms. Polk filed a response to MCPS's SOP with EEOC.

41. On or about April 11, 2024, Ms. Polk requested EEOC to issue a "right to sue" notice, as it had been more than 180 days from the filing of her charge with EEOC.

42. On April 12, 2024, EEOC issued Ms. Polk a "right to sue" notice in this matter.

Irreparable Harms Absent Injunctive Relief and the Public Interest

43. Ms. Polk is suffering irreparable harm due to the violation of her constitutional rights.

44. Ms. Polk is suffering irreparable harm by not being able to substitute teach and by not being paid regularly for that work.

45. Without injunctive relief, it is likely that Ms. Polk will not be able to substitute teach for MCPS during the 2024-25 school year.

46. The public interest supports the prompt and strict enforcement of Title VII, which safeguards the religious freedom of employees.

47. The public interest supports an accommodation of an employee's religious beliefs if that accommodation will not cause undue hardship to the overall business of the employer.

48. The public interest supports the free exercise of religion when it can reasonably be accommodated in the public workplace.

49. The public interest supports the rights of parents to direct the care, health, and welfare of their minor children.

50. As demonstrated by federal law, including but not limited to FERPA, the public interest supports the parents' right to know how public schools are treating their minor children.

51. The public interest opposes government employers from requiring their employees to conspire with them to deprive parents of their constitutional rights by communicating misleading messages to them or by withholding information from them about how their children are treated at school.

52. MCPS will not be harmed by accommodating Ms. Polk's religious beliefs, much less will it suffer undue hardship to its overall business.

## Count I

### Defendants' Violation of Title VII

53. Ms. Polk incorporates by reference all other allegations of this complaint.

54. Title VII of the Civil Rights Act of 1964 declares it unlawful for covered employers "to fail or refuse to hire . . . any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

55. MCPS is a covered employer under Title VII.

56. When defining *religion* for purposes of unlawful discrimination, Congress in Title VII specifies as follows:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

57. The burden is on the employer to defend a denial of a religious accommodation by showing it would result in substantial increased costs in relation to the overall context of the conduct of its particular business. Showing a *de minimis* burden does not suffice. MCPS has not met, and cannot meet, its burden to deny Ms. Polk a religious accommodation by demonstrating an undue hardship.

58. Bias or hostility to a religious practice or a religious accommodation does not provide a valid defense to an employer or state any type of a hardship, much less an "undue" one.

MCPS's sole defense is that it does not agree with Ms. Polk's religious beliefs and practices; that defense is insufficient as a matter of law.

59. An employer must consider not only the particular accommodations requested by an employee, but must affirmatively consider all possible accommodations.  MCPS unreasonably rejected the accommodations suggested by Ms. Polk and refused to consider any other possible accommodations.

60. MCPS's proffered "accommodation" of allowing Ms. Polk not to assent in writing to the policies that offend her religious beliefs but to violate them in practice is no accommodation at all, but a demonstration of MCPS's bias and hostility to Ms. Polk's religious beliefs and practices and compels her to choose between her job and being true to her religious beliefs.

WHEREFORE, Ms. Polk should be granted the relief she requests in the Requests for Relief.

## Count II

## 42 U.S.C. § 1983

## Defendants' Violation of Free Speech

61. Ms. Polk incorporates by reference all other allegations of this complaint.

62. The First Amendment, as incorporated to state actors through the Fourteenth Amendment, provides that public entities shall not infringe an individual's freedom of speech.

63. The Defendants are state actors to whom the First Amendment, as incorporated to state actors through the Fourteenth Amendment, applies.

64. 42 U.S.C. § 1983 states in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

> party injured in an action at law, suit in equity, or other proper proceeding for redress . , , ,

65. It is a violation of the Free Speech Clause of the First Amendment for a state actor to compel an employee (a) to communicate a message that violates the law or (b) to act in concert with the government to violate the constitutional rights of a third party. These are unconstitutional conditions.

66. The Defendants violate Ms. Polk's free speech rights by compelling her, on condition of continued employment, to communicate misleading messages to parents and to deny them the opportunity to exercise their constitutional rights to care for and make decisions for their minor children regarding an important, non-curricular decision affecting the health and welfare of their children.

67. The Defendants violate Ms. Polk's free speech rights by requiring adherence to a content-based policy that discriminates by viewpoint.

WHEREFORE, Ms. Polk should be granted the relief she requests in the Requests for Relief.

## Count III

### 42 U.S.C. § 1983

### Defendants' Violation of Free Exercise Clause

68. Ms. Polk incorporates by reference all other allegations of this complaint.

69. The Defendants violate Ms. Polk's free speech rights by engaging in content-based regulation that is viewpoint discriminatory.

70. The First Amendment, as incorporated to state actors through the Fourteenth Amendment, provides that public entities shall not infringe an individual's free exercise of religion.

71. The Defendants violate Ms. Polk's free exercise rights by compelling her to communicate messages to students and parents and to take other actions with which she objects on the basis of sincerely held religious beliefs on penalty of refusing to employ her and/or continuing to employ her.  These are unconstitutional conditions.

WHEREFORE, Ms. Polk should be granted the relief she requests in the Requests for Relief.

## Requests for Relief

Ms. Polk requests that she be granted the following relief:

1. A declaration that MCPS violated Title VII;

2. A declaration that MCPS has violated 42 U.S.C. § 1983 by depriving her of her rights of free speech;

3. A declaration that MCPS has violated 42 U.S.C. § 1983 by depriving her of her rights of the free exercise of religion;

4. Make whole relief, including but not limited to monetary damages in an amount to be proven for her lost wages and compensatory damages;

5. A preliminary injunction allowing her to continue to substitute teach in classrooms in which students who are transitioning genders are not enrolled;

6. A permanent injunction consistent with the declaratory relief provided by the Court;

7. Attorneys' fees and expenses; and

8. Such other relief as is appropriate and permissible.

## Jury Demand

Plaintiff demands a jury trial for all issues triable by a jury.

Respectfully submitted,

/s/ Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.
 (Counsel of Record)
Claybrook LLC
655 15th St., NW, Ste. 425
Washington, D.C. 20005
(202) 250-3833
rick@claybrooklaw.com
Bar No. 21604

Steven W. Fitschen*
James A. Davids*
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 463-6133
sfitschen@nationallegalfoundation.org
jdavids@nationallegalfoundation.org

Attorneys for Plaintiff

*Application for admission pending

Of Counsel
Robert Flores
Gammon & Grange, P.C.
1945 Old Gallows Rd., Ste. 650
Vienna, Va. 22182
jrg@gg-law.com

May 15, 2024

## VERIFICATION

I, Kimberly Ann Polk, state as follows:

1. I am the Plaintiff in the attached complaint. I am over 18 and have firsthand knowledge of the facts stated in the complaint.

2. I affirm that the facts stated in the attached complaint are true and accurate to the best of my knowledge and belief.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15 day of May 2024.

_____
Kimberly Ann Polk